THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* DIANA DIOTAVIO, Defendant.

Court of Special Sessions held by a City Magistrate of the City of New York, Borough of Queens, November 11, 1953.

*T. Vincent Quinn, District Attorney (William M. Blake* and *Frank L. Nolan* of counsel), for plaintiff.

*Nadav A. Benderle* and *David S. Goodzeit* for defendant.

J. I. Shapiro, M.    This case charging the defendant with a violation of section 982 of the Penal Law (possession of a slot machine) came on for trial before this court sitting as a Court of Special Sessions.

The machine in question consists of a gun into which a penny is inserted.  The gun is aimed at a target.  The target has a hole which leads to a return pocket into which the penny falls if the target is hit.  There is also a receptacle for gumballs. The machine works in the following manner: (1) A penny is inserted in the gun.  (2) The purchaser shoots the penny at the target.  (3) If the penny hits the target, the penny is returned.  (4) If the penny does not hit the target, a gumball is dispensed.

The machine, which was received in evidence and examined by the court, is known as a national target machine.

An engineer from the police department testified without contradiction that the most expert player could not hit the target more than three times out of ten and that even when the gun was mechanically immobilized it varied in its results.

The People contend that the machine is a gambling device. The defendant contends that it is merely a vending machine for the purpose of selling gumballs which returns the purchase price to the player if he hits the target, thus allowing him to do what he will with it thereafter, and giving him a gumball if he misses the target.  That is the issue.

The pertinent parts of section 982 of the Penal Law read as follows: " 982. *Keeping slot machines or devices.* 1. It is unlawful (a)  *  *  * to permit the operation of, or for any person to permit to be placed, maintained, used or kept in any room, space or building owned, leased or occupied by him or under his management or control, any slot machine or device as hereinafter defined: 2. Any machine, apparatus or device is a slot machine or device within the provisions of this section if it is one that is adapted,  *  *  * for use in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, or the user may secure additional chances or

rights to use such machine, apparatus or device * * * 3. A person who violates this section is guilty of a misdemeanor."

The machine is clearly a slot machine as defined in the Penal Law for under the uncontradicted testimony in this case the "outcome of such operation", i.e., the use of the machine, results in an outcome which is "unpredictable" to the player. Therefore, if in addition it permits the user to receive "any piece of money" or "thing of value" which may be "given in trade," or by which "the user may secure additional chances or rights to use such machine," it is a gambling device under the terms of the statute.

Human ingenuity in inventing devices to appeal to the undeniable gambling instincts in man (and that term is used generically to include women and children as well) apparently knows no bounds, and the cases are replete with instance after instance of the continued efforts of slot machine manufacturers to get around the salutary provisions of our Penal Law which seek to protect our citizens from their own frailties (*People* v. *Gravenhorst*, 32 N. Y. S. 2d 760).

In an effort to overcome the decision in *Lyman* v. *Kurtz* (166 N. Y. 274), which held illegal a machine in which the player by the insertion of a coin either lost the amount played or received moneys in *varying* amounts, slot machine manufacturers produced machines which omitted the "payoff" in money but substituted therefor either additional merchandise or tokens exchangeable for such merchandise. Meeting with judicial condemnation of the use of such machines in *Matter of Cullinan* (114 App. Div. 654), *People ex rel. Vercherau* v. *Jenkins* (153 App. Div. 512) and *People* v. *Stein* (146 N. Y. S. 852), the manufacturers next proceeded to produce machines which indicated exactly what the "payoff" or win would be. These, too, were held to violate the terms of the statute (*Green* v. *Enright*, 208 App. Div. 819; *People* v. *Spitzig*, 133 Misc. 508).

Finally, the manufacturers seemingly hit upon a machine which did not contravene the statute. The Court of Appeals in *People* v. *Jennings* (257 N. Y. 196–197 upon which the defendant here strongly relies), described the machine in that case thusly: "By the dropping of a coin in the slot and the pulling of a lever a candy mint falls out of the machine and a witty or funny saying appears in an upper panel. One or more metal rings of no intrinsic value may also fall out, according to combinations formed upon the turn of a lever. These rings or metals have no money value. By their insertion in the slot other bright or witty statements appear in the panel."

In determining that that machine did not contravene the provisions of section 982 of the Penal Law, the Court of Appeals, per CRANE, J., said (p. 198): "The product, however, is valueless from a monetary standpoint, perhaps, if not from any other. Section 982 of the Penal Law differs from section 970-a in certain particulars. The former section applies to the possession of slot machines, and makes it a misdemeanor to keep or maintain any machine into which may be inserted a piece of money * * *, ' or any check or memoranda calling for any money.' The latter section 970-a applies to the sale or lease of a slot machine, and this describes the contrivance as one from which ' may issue any piece or pieces of money, or any check or memoranda calling for any money; or any machine or device of any kind or nature by the use or operation of which there is an element of chance for the winning or losing of money or other things of value.' The words ' other things of value ' do not appear in section 982. Nothing of value, or at least of money value, came out of the machine in the control and possession of the defendant in this case. The judgment of conviction for the violation of section 982 is unsupported by the evidence and must be reversed."

Subsequent to that decision, and probably as a result thereof, the Legislature by chapter 317 of the Laws of 1934, in effect May 17, 1934, broadened the provisions of section 982 of the Penal Law to include the receipt of any " thing of value " by which the user of the machine " may secure additional chances or rights to use such machine " (*People* v. *Fitzgibbons,* 33 N. Y.S. 2d 377, 380).

It it clear that by the operation of the instant machine, the user may under certain circumstances receive the return of his own coin, thus bringing the machine within the condemnation of the statute for by its operation he " may receive or become entitled to receive any (a) piece of money, * * * or thing of value, or * * * which may be given in trade ". Even if it could be contended that the return of one's own coin is not what is contemplated by the statute when it speaks of receiving or becoming entitled to receive any piece of money, it would still come under the ban of the statute for the latter also prohibits such a machine and denominates it a gambling device if by the playing thereof the user " may secure additional chances or rights to use such machine ". In other words, getting a " free play " is one of the things condemned by section 982 of the Penal Law as broadened by the amendment above set forth, and therefore *People* v. *Jennings (supra),* is not representative of the present state of the law. It is

immaterial that the player receives the *chance* or *right* to a free play by the return of his own coin instead of by getting a metal disk or token which could be used for that purpose and that he may or may not use the returned coin to play the machine again, for the section is violated if by the initial use of the machine the player may be afforded the opportunity to "secure additional chance or rights to use such machine". It is the fact that the winner has another chance or right to play the machine *without additional cost to him,* that brings the machine within the ban of the statute.

In *People* v. *Swartz* (282 N. Y. 596), a judgment of conviction was affirmed (without opinion) in a case where the record on appeal shows that the machine "allowed" winning players a free game. In *People* v. *Raziano* (268 App. Div. 798), "The device released only three metal balls for play. The balls were kicked by a robot 'football kicker' and if any was caught by a robot 'football catcher', it dropped back to its original starting point, where it was in position to be kicked again with any other unused ball." In affirming a judgment of conviction the Appellate Division in the second department said: "The user of the machine thus was given 'additional chances or rights to use such machine, apparatus or device'. The machine was, therefore, a slot machine or device within the provisions of section 982 of the Penal Law."

In *Seaboard N. Y. Corp* v. *Wallander* (192 Misc. 227, 231–232), the court in referring to section 982 of the Penal Law said: "The reference to additional rights in the statute is an opportunity which, in the vernacular of the pinball machine business, calls for the enjoyment of a free play of the machine by the user."

As a prosecutor for almost two decades, and as one of the Judges presiding in the Adolescent Division of this court, this court knows of his own experience that there is a definite relationship between the creation and growth of juvenile delinquency and indeed more serious offenses and crimes against the common weal, and the operation of slot machines, which apparently appeal to the gambling instincts in young and old alike. Indeed, in *Seaboard N. Y. Corp.* v. *Wallander (supra,* p. 234) where it was sought to restrain the police commissioner of the city of New York from interfering with the use and operation of slot machines, the testimony of responsible prosecuting officers showed that "there was a close relationship between the operation of pin-ball machines in this city and the increase in juvenile delinquency, as well as in the commission of many serious crimes

of violence, including those of a racketeering nature, and even of murder.''

Where the instrumentality thus in question has such great potentialities for harm to our citizens of tomorrow, a court should not be zealous by a strained construction of the statute, or by an unrealistic appraisal of the purpose of the machine or device, to find an avenue of escape for those who would for pecuniary gain debauch our youth.

Under the circumstances, the machine now before the court is declared an '' outlaw '' and the defendant is found guilty.

The defendant is directed to present himself for sentence before this court on the 13th day of November, 1953, at which time, in addition to the sentence pronounced upon him, the court will, pursuant to the command of section 985 of the Penal Law '' cause the immediate destruction of the machine, apparatus or device '' now before the court.